# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **CARL F. MILLS** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| | ) **CIVIL ACTION NO.** |
| | ) **2:04-CV-2984-VEH** |
| **v.** | ) |
| | ) |
| **HEALTHSOUTH** | ) |
| **CORPORATION** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Before the court is defendant HealthSouth Corporation's Motion for Summary Judgment (Docs. 27, 28). For the reasons stated in this opinion, the court grants the defendant's motion for summary judgment as to the plaintiff's 42 U.S.C. §§ 2000e *et seq.* (Title VII) and 42 U.S.C. § 1981 claims.

I.  **FACTS[1]**;

Carl Mills was hired in August 2002 as an hourly employee at HealthSouth's National Diagnostic Collections Center ("NDCC").  NDCC is a centralized billing and collection facility for HealthSouth's 80-100 diagnostic facilities throughout the country.  NDCC is responsible for ensuring that payments received from/for each facility are properly credited to that facility's account and the patient's account.  The NDCC also verifies and posts electronic fund transfers (EFTs) received by facilities. In November 2003 the Plaintiff interviewed for the Data Coordinator position,

---

[1] Plaintiff failed to file a brief in opposition to the defendant's motion for summary judgment.  The nonmovant has not opposed the motion for summary judgment in the instant action.  However, "the district court cannot base the entry of summary judgment on the mere fact that the motion [is] unopposed, but, rather, must consider the merits of the motion." *United States v. One Piece of Real Property*, 363 F.3d 1099, 1101 (11th Cir. 2004), citing *Dunlap v. Transamerica Occidental Life Ins. Co.*, 858 F.2d 629, 632 (11th Cir. 1988) (per curiam).  While this court is not required to examine every item of evidence before it when considering a motion for summary judgment, it must make certain that the motion is "supported by evidentiary materials." *One Piece of Real Property*, 363 F.3d at 1101. At the least, this court must consider all the evidence submitted by the movant in support of its motion. *Id.*, citing *Jeroma v. Massey*, 873 F.2d 17, 20 (1st Cir. 1989) (per curiam) (". . . the district court must review the motion and the supporting papers to determine whether they establish the absence of a genuine issue of material fact.")  The movant must demonstrate an absence of a genuine issue of material fact; if the movant fails to meet his burden, this court may deny the motion, without regard to whether the nonmovant has filed a response.  *Hibernia Nat'l Bank*, 776 F.3d at 1279, citing *John*, 757 F.2d at 708.  However, if the nonmovant has not supplied the court with a response to dispute any issue of fact, this court may receive the movant's factual account as "a prima facie showing of its entitlement to judgment."  *Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988), citing *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

however the Data Coordinator position was awarded to April Taylor, an African-American female.

In December 2003 NDCC was reorganized. Each NDCC employee was interviewed to determine which position(s) would best suit his/her skills and experiences. Carl Mills, the plaintiff, was offered and accepted the Financial Resources Coordinator position. This was a promotion from his hourly position at NDCC to a salaried management position with a $10,000 raise. The Financial Resources Coordinator had two primary functions: (1) to provide NDCC's weekly revenue reports and monthly financial reports to Corporate for accounting and planning purposes and (2) overseeing and managing NDCC's Cash Department. After six weeks of training, the plaintiff continued to consistently submit erroneous and inaccurate reports which misrepresented the financial status and analysis of NDCC.

On January 20, 2004 the Financial Resources Coordinator position was eliminated and two new positions were created: Cash Coordinator and Financial Resources Manager. Carl Mills was awarded the Cash Coordinator position. This position was a management position with no change in pay or benefits. The Cash Coordinator had the same responsibilities as the old Financial Resources Coordinator with two exceptions: (1) there were no financial accounting and reporting

responsibilities and (2) the Cash Coordinator assumed responsibility for the refund process. The Cash Coordinator reported to the Financial Resources Manager, Tara Vail, who in turn reported to both the Division Controller and the NDCC manager. As the Cash Coordinator, the plaintiff's primary responsibilities included (1) daily tracking of all EFTs on line, and (2) overseeing and managing all funds received by NDCC and the Department's six employees. The plaintiff was required to also check daily each facility's online bank account to see if any funds had been electronically deposited.

The Data and Cash Departments were functionally similar and therefore it was decided that these coordinators would share a two person office in the immediate area of the employees they supervised.

The cash clerks in the plaintiff's department were to verify that the cash/ check payments in the package shipped from the various facilities matched those listed on the "one-write[2]." The cash clerks would then prepare a bank deposit slip so that the Cash Coordinator could deposit those funds into the bank that day. The Cash

---

[2] "One writes" are reports showing any revenue that is actually received at a diagnostic facility. It could take the form of a money order, check, credit card or vendor payment. The one write is a report that has identifying information about the date, facility and any payments sent to the NDCC. The Cash department was responsible for taking the one write report and reconciling what was shown on the report with the actual checks, money orders, and credit card payments that would be attached. *See Plaintiff's deposition*, defendant's Ex. 1, p. 163-67.

Department's main responsibility was to match the total of each remittance statement with the deposit. After the Cash Coordinator deposited funds into the local bank, the Data Department identified and posted each individual payment to the correct facility and patient accounts. After being verified on-line, each EFT also went to the Data Department for the same posting process. Receipts could not be posted until they were either deposited in the bank or the EFT had been verified. A delay in the deposit/verification process would result in a delay to the facility receiving credit for the payment.

    Carl Mills failed to check the EFTs daily, and instead waited for the EFT remittance paper work before verifying an electronic deposit. The plaintiff's failure to perform his daily responsibilities resulted in complaints to NDCC supervisors from facility administrators that they were not getting credit for money electronically deposited in their accounts. On February 18, 2004, Tara Vail, Mill's supervisor, sent the plaintiff an e-mail highlighting the areas were he needed to improve. On March 31 and April 21, Vail received more complaints from various facility administrators complaining that their respective EFTs were still not verified and posted despite several weeks of complaining. Vail discovered in investigating the plaintiff's work, that Mills was not verifying the EFTs daily.

On March 10, 2004 Vail arranged for a meeting with other supervisors and Mills to address the plaintiff's problems. The plaintiff was instructed to prepare and forward to all the appropriate supervisors a summary of current NDCC accounts detailing each facility's financial electronic transmittal information. Mills failed to attend this meeting. On March 18, the Plaintiff was sent to the Corporate office for several hours of one-on-one training regarding the EFT process. NDCC managers also had monthly managerial training sessions. Mills missed several of these mandatory training sessions. During Mills' tenure as Cash Coordinator, Vail also counseled Mills on the importance of being at work during regular business hours, and of following the proper procedures fro requesting time off because his absences affected others and their ability to take time off.

In mid-late February, Mills and Vail met to discuss plaintiff's work problems. Mills agreed that he would ask questions about things he did not understand and that he would keep Vail informed on all outstanding issues in the Cash Department. However, despite this meeting Vail continued to receive several complaints from employees and facility administrators about Mills' performance. On April 23, 2004 Mills' employment with HealthSouth was terminated. The plaintiff was noted as having been terminated for poor performance, lack of productivity and credibility, failure to prioritize, failure to track EFTs, length of time in completing assignments,

intimidation of employees and complaints from facilities. At the time of plaintiff's termination, a total of $730, 346.19 outstanding EFTs were still not verified and posted. After Mills' termination, the Cash Coordinator position was divided among several other positions, with the majority of responsibilities assumed by the Data Coordinator, Ms. Taylor, an African-American female. No one was hired or transferred into the Cash Coordinator position.

Carl Mills brings this suit against HealthSouth for alleged violation of 42 U.S. C.§§ 2000 e *et seq.* (Title VII) and 42 U.S.C. § 1981 (§ 1981).[3] The plaintiff seeks a declaratory judgment that the employment policies, conditions, practices and customs of HealthSouth violated the rights of plaintiff under Title VII and § 1981, a permanent injunction enjoining the defendant, its agents, successors, employees and attorneys form continuing to violate Title VII and § 1981; monetary damages including back pay and benefits plus interest, reinstatement with full seniority and benefits ( or front pay in lieu thereof); any punitive damages or nominal damages, as well as any other relief or benefits as justice may require, including but not limited to  attorneys' fees and costs.

---

[3] The same framework used to analyze claims under Title VII is also employed in assessing claims of employment discrimination under § 1981. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp., 477 U.S. at 323.  Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  Id. at 324.

The substantive law will identify which facts are material and which are irrelevant.  Chapman, 229 F.3d at 1023; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  Chapman, 229 F.3d at 1023; Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Chapman, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249.

## III. *MCDONNELL DOUGLAS* FRAMEWORK

In a case brought under Title VII, the plaintiff bears the initial burden of proving that race was a motivating factor in an adverse employment decision. *Bonner v. Home Depot*, 323 F.Supp. 2d 1250, 1258 (S.D. Ala. 2004). HealthSouth moves for summary judgment on the grounds that the plaintiff cannot establish a prima facie case of racial discrimination and that HealthSouth had a legitimate, nondiscriminatory reason for terminating the plaintiff.

The evidence when viewed in a light most favorable to the non-movant shows that the plaintiff has not established a prima facie case of race discrimination based on circumstantial evidence.[4] The Eleventh Circuit has held, "[w]hen a plaintiff offers circumstantial evidence to prove a Title VII claim, we use the analytical framework

---

[4] The plaintiff does not present any evidence to establish discriminatory motive based on direct or statistical discrimination. Therefore, the *McDonnell Douglas* burden shifting analysis applies. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The defendant's motion for summary judgment notes, "Plaintiff admits that nothing was said, written, or documented in any form indicating that his race had anything to do with his termination." *Defendant's Motion for Summary Judgment*, p. 20 footnote 17, citing Plaintiff's deposition, Ex. 1, p. 351.

9

established by the Supreme Court in *McDonnell Douglas Corp v. Green*, 411 U.S.792, 93 (1973).  The establishment of a prima facie case creates a presumption of discrimination". *Standard v. A.B.E.L. Servs. Inc.*, 161 F.3d 1318, 1331 (11th Cir. 1998). The plaintiff has not produced evidence that he was discharged on the basis of his race and as such, the defendant is entitled summary judgment.

In *Holifield v. Reno*, the Eleventh Circuit held, " a plaintiff establishes a prima facie case of race discrimination under Title VII by showing : (1) He belongs to a racial minority; (2) he was subjected to an adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job." *Holified v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

However, despite the fact that a plaintiff may establish a prima facie case of discrimination, the case may still be dismissed on summary judgment if the defendant has a legitimate, non-discriminatory reason for its employment decision, and the plaintiff cannot establish that this proffered reason is but a pretext for a discriminatory motive.

In this case while it is evident that the plaintiff who is African-American belongs to a protected class and was subject to an adverse job action, the defendant contends the plaintiff has failed to produce evidence that HealthSouth treated similarly situated non-minority employees more favorably and that Mills had the

necessary qualifications to become Cash Coordinator,

### A. *No similarly situated employee*

The plaintiff submits no evidence that a similarly situated employee was treated more favorably as a Cash Coordinator. Instead he makes allegations that are unsupported by any factual evidence. Mills' complaint states that "White female employees were treated more favorably than I. I had a different reporting structure than White female coordinators and was required to share an office whereas White female coordinators had individual offices." *Plaintiff's complaint*. Similarly the plaintiff alleges that "the White Females were trained by Tara Vail and often confided and received instructions from Tara without any kind of communication to myself concerning work actions. [. . .] I had a different reporting structure versus other White Female Coordinators." *Plaintiff's complaint*. The plaintiff's broad allegations fail to specifically identify a similarly situated employee who performed as inadequately on their job as the plaintiff, yet was not terminated.

Healthsouth does note that in the plaintiff's deposition, Mills alleges that Donna Burch and Cindy Coley, both white female coordinators, were treated more favorably. *Defendant's motion for Summary Judgment*, p.23, footnote 20. As support, the plaintiff stated in his deposition that Donna Burch had her own office, that she often spoke with supervisors, and she never appeared to be under stress.

However, the plaintiff admits that Burch oversaw ten times as many employees, and that he had no knowledge that Burch had any performance problems or deficiencies. *Plaintiff's Deposition*, p. 361-62.

As to Cindy Coley, the only evidence from the plaintiff is his deposition testimony that Coley had her own office, and "appeared to [have] too much time on her hands." The plaintiff again admitted having no knowledge of any performance problems or deficiencies by Cindy Coley. *Plaintiff's Deposition*, p. 367, 369. In *Malladi v. Brown*, the district court noted, "[t]o be deemed 'similarly situated' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have *engaged in the same conduct* without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Malladi v. Brown*, 987 F. Supp 893, 909 (M.D. Ala. 1997). (Emphasis supplied).

In this case, Mills failed to produce any evidence that Donna Burch or Cindy Coley failed to perform there jobs duties as required by HealthSouth. The record does not reflect any facts that would show Donna Burch or Cindy Coley received complaints from facility managers about verifying EFTs or that they failed to attend training sessions and meetings as did Mills. The evidence shows that Burch and Coley were not engaged in the same conduct as Mills, and therefore cannot be

considered similarly situated employees for purposes of Title VII comparison.

Although both Burch and Coley had their own offices, and the plaintiff was required to share an office with April Taylor, the plaintiff admits in his deposition that Ms. Taylor's department would be the department in which he worked most closely. Mills stated that the billing and collecting departments "would be joined at the hip" *Mills Deposition*, p. 313-314. Similarly the plaintiff noted that the office occupied by he and Ms. Taylor was a two-person office, and that it was located within the immediate area where the Cash and Data department employees were located. *Id.* at. 315-16. The evidence shows that Vail and another HealthSouth Supervisor made the decision to have Taylor and Mills share an office " because [they] needed the office to be for the person that was going to. . [do] all of the financial reporting because that was the only place that [they] had to have financial records locked and stored in cabinets in a secure location." *Studdard Deposition*, p. 34. Mills offers no evidence to refute that HealthSouth did not have a legitimate business reason for requiring he and Taylor to share an office. Mills' allegations that certain White females were treated more favorably than he must fail for lack of evidence that there was a non-minority employee whose job performance was as poor as his who was not terminated, and for lack of a sufficient rebuttal to HealthSouth's decision to require the Data and Cash coordinators to share an office.

### B. Lack of Qualifications

As a second matter, Mills cannot establish a prima facie case of race discrimination because the evidence shows that he was not qualified for the position. In *Aldabblan v. Festive Pizza, Ltd.*, the district court noted that " where the plaintiff has not enjoyed a lengthy tenure in the position, and the plaintiff otherwise fails to establish that his job performance met the legitimate expectations of his employer, the plaintiff cannot met the fourth element of his prima facie case." *Aldabblan v Festive Pizza, Ltd.*, 380 F.Supp.2d 1345, 1352 (S.D.Fla. 2005) *Citing Damon v. Fleming S upermarkets of FL.* 196 F. 3d 1354, 1360 ( 11th Cir. 1999).

In this case, the plaintiff had not enjoyed a long tenure as Cash Coordinator, as he had only been in the position from the end of January 2004 until April 23, 2004. *Defendant's motion for Summary Judgment*, p. 6, 17.  During this time, Mills failed to meet the expectations of HealthSouth by consistently failing to daily verify EFTs as required in his job description, by failing to be at work during regular business hours, and by not following the proper procedures for requesting time off. *Defendant's motion for Summary Judgment*, p. 14, 16-17. HealthSouth noted as its basis for Mills' termination that Mills had poor work performance, failed to track EFTs, took an unreasonable length of time completing assignments, intimidated other employees and received complaints from facilities. *Id.* at 17.  The plaintiff offers no

evidence to refute any of HealthSouth's allegations. While it is true that if "a plaintiff has held a position for a significant period of time, qualification for that position, sufficient to establish a prima facie case may be inferred," in this case Mills had not worked at HealthSouth as Cash Coordinator for a significant amount of time to be considered qualified. Moreover Mills' job performance during his limited tenure as Cash Coordinator clearly shows that he was not qualified for the position, and therefore he can not prove his termination was based on racial animus. *Aldabblan v Festive Pizza, Ltd.*, 380 F.Supp.2d 1345, 1352 (S.D.Fla. 2005).

### C. HealthSouth's Legitimate, non-discriminatory reason

HealthSouth also contends that they have a legitimate, non-discriminatory reason for terminating the plaintiff. Current caselaw holds that an "employer may fire an employee for a good reason, a bad reason , a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984). The defendant's burden of producing a legitimate, non-discriminatory reason is exceedingly light. *See Smith v. Horner*, 839 f. 2d 1530, 1537( 11th Cir. 1988) The court is "not in the business of adjudging whether employment decisions are prudent or fair. Instead, [the] sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." *Damon v. Fleming Supermarkets*, 196

F.3d 1354, 1361, (11th Cir. 1999).

HealthSouth posits that Mills was terminated due to poor performance, lack of productivity and credibility, failure to prioritize and track EFTs, length of time completing assignments, intimidating employees and complaints from facilities. *Defendant's motion for Summary Judgment*, p. 25. The Defendant offers the deposition testimony of Mills in which the plaintiff admits that these allegations were accurate. The plaintiff states upon questioning:

> Q: . . .[Y]ou knew that there were complaints regarding payments getting posted to the credit of certain facilities?
>
> A: Right.
>
> Q: . . .[Y]ou were aware that there were problems in that regard.
>
> A: Right.
> *Plaintiff's deposition* p.340-341
>
> Q: And the other thing you didn't understand how to do or couldn't do was dealing with these electronic fund transfers?[. . .]
>
> A: Right.
> *Plaintiff's deposition*, p. 120
>
> Q: Were you still having problems accessing the EFTs in March and April of 2004?
>
> A: Yes.

16

> Q: In fact, I think you testified earlier in your deposition that that was one of the Cash Coordinator functions that you were never able to do satisfactorily?
>
> A: Yes.
>
> *Plaintiff's deposition*, p. 312-313.

The plaintiff admits in his deposition that he had difficulties performing his job requirements. Indeed the evidence shows that by the time plaintiff was terminated a total of $730, 346.19 in EFTs were still not verified and posted. *Studdard Declaration.* ¶ 18; *Plaintiff's Deposition*, p. 386.

The record is replete with evidence that HealthSouth had a legitimate, non-discriminatory reason for terminating the plaintiff. As the Eleventh Circuit has held, "Federal Courts do not sit as a super-personnel department that reexamines an entity's business decisions. . .Rather our inquiry is limited to whether the employer gave an honest explanation of its behavior." *Alphin v. Sears, Roebuck & Co.*, 940 F.2d 1497, 1501 (11th Cir. 1991). Here the evidence shows that HealthSouth's reasons for terminating the plaintiff had a legitimate, factual basis as Mills was not performing his job as required by the defendant.

### D. *No pretext*

Lastly, the plaintiff has failed under the *McDonnell Douglas* framework to show

pretext. A plaintiff may prove pretext by " direct evidence of discrimination, in the form of discriminatory statements and admissions". *Miles v. M.N.C. Corp.*, 750 F.2d 867, 870 (11th Cir. 1985). When a plaintiff is trying to prove pretext, " the plaintiff can demonstrate that the proffered reasons were not the true reasons for the employer's decision either by directly persuading the court a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* However. Mills produces no direct or indirect evidence that HealthSouth's decision was unworthy of credence and were not the true reasons for its decision. The facts show that the plaintiff's termination had nothing to do with race, but was based on Mills poor job performance. Mills himself admits in his deposition testimony that he understood the reasons given for his termination, and that he had indeed suffered from HealthSouth's cited job deficiencies:

> Q: The reasons that we've been over, the reasons you were given for your termination, . . .do you have any evidence or information from any source to indicate that those reasons,. . .were a pretext or a false reason for your termination?
>
> A: I do.
>
> Q: Tell me what that evidence or information is.
>
> A: Number one, lack of training, lack of personnel.

>           We were a new department with new responsibilities. And, again, no clear-cut instructions on how to perform the job duties, just a list of what those responsibilities were.
>
> Q:      Anything else?
>
> A:      That's it.
>
> Q:      If I understand what you're saying here, *your pretext evidence is not to indicate that you weren't having these performance problems,* but these are your excuses or explanations for those problems? (Emphasis added)
>
> A:      Exactly, yes.
>
> Q:      Is that right?
>
> A:      Yes, Yes.
>
> Q:      But as far as the reasons given in your termination meeting, by way of example, *not getting EFTs done, not prioritizing certain work like EFTs, those were true: correct? I mean, You were having problems in those areas, performance problems in those areas?* (Emphasis added)
>
> A:      Yes.

The evidence from the record shows that Mills consistently received complaints from facility managers and that he did not check EFTs on a daily basis. Mills has not produced evidence to establish a prima facie case nor can he rebut HealthSouth's

race-neutral reasons for its decision.

In conclusion summary judgment is due to be granted to the defendant. No genuine issue of material fact exists that HealthSouth terminated Mills because of a discriminatory animus regarding his race. HealthSouth is therefore entitled to summary Judgment as a matter of law. An order in conformity with this memorandum opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** this 17th day of April, 2006.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge